No. 87-69

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

WILLIAM COBLE,

Petitioner and Appellant,

-vs-

DANIEL MAGONE,
Missoula County Sheriff,

Defendant and Respondent.

APPEAL FROM: The District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dirk Beccari, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Asst. Atty. General, Helena
Robert L. Deschamps, III, Missoula County Attorney,
Missoula, Montana

Submitted on Briefs: Aug. 13, 1987

Decided: November 3, 1987

Filed: NOV 3 - 1987

_Ethel M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This appeal arises from a denial of a writ of habeas corpus in the District Court of the Fourth Judicial District, Missoula County. Petitioner-Appellant, William Ray Coble (Coble), applied for the writ of habeas corpus based on the theory he should not be extradited, pursuant to the Uniform Criminal Extradition Act (§§ 46-30-101, et seq., MCA), to the State of Idaho on a Governor's warrant. Coble appeals this ruling. We find the District Court reached the proper conclusion in this case.

Generally, a proper procedure for review would be to petition for a writ of certiorari. A denial of a writ of habeas corpus is not properly appealable to this Court. In re Hart (1978), 178 Mont. 235, 583 P.2d 411. However, due to the nature of this claim, and in light of judicial economy, we will review the case as a petition for writ of certiorari.

The issue we must answer is whether the District Court erred in denying the writ of habeas corpus because petitioner is a juvenile and therefore not subject to the Uniform Criminal Extradition Act.

During mid-June, 1986, Coble's mother moved from Payette, Idaho to Missoula, Montana. Coble, age seventeen, stayed in Payette and allegedly stole a 1979 Mercury Monarch and destroyed some household furnishings. He later joined his mother in Missoula. On July 16, 1986, a Lawyer Magistrate of the District Court of the Third Judicial District of the State of Idaho issued a warrant for the arrest of Coble. The warrant charged Coble with the felony offenses of Grand Theft, Idaho Code §§ 18-2403(1) and 18-2407(1) and Malicious Injury to Property, Idaho Code § 18-7001.

Coble was arrested in Missoula and on July 22, 1986 appeared in District Court. He informed the court at that time that he would fight extradition. A Governor's warrant was issued by the Governor of Montana on September 3, 1986 after a Demand for Extradition was made by the Governor of Idaho on August 6, 1986. The Governor's warrant from the state of Idaho was accompanied by an application for requisition and a warrant for Coble's arrest.

Coble filed the petition for the writ on September 18, 1986. After various extensions of time were granted, on December 9, 1986 the District Court entered findings of fact, conclusions of law and an order denying the writ. The findings of fact stated: 1. the Governor of Montana had issued a warrant for Coble's arrest; 2. Coble was indeed the William Jay Coble named on the warrant; 3. the extradition documents appeared "on their face to be in order"; 4. Coble was charged with the crimes of Grand Theft and Malicious Injury to Property (felonies in Idaho); 5. Coble was fugitive; and 6. Coble was seventeen years old.

The District Court further found as conclusions of law that Coble had been lawfully detained and all of the requirements of the Uniform Criminal Extradition Act were properly complied with. Finally, the court found that Coble was not exempt from the Uniform Criminal Extradition Act on the basis that he was a juvenile. Coble contends that the District Court erred in finding that the Uniform Extradition Act applied to him because he is a juvenile. We disagree.

We have previously held that a court, in its scope of inquiry of whether the Uniform Criminal Extradition Act is applicable, is limited to the following considerations:

> (a) whether the extradition documents on their face are in order;

> (b) whether the petitioner has been charged with a crime in the demanding state;
>
> (c) whether the petitioner is the person named in the request for extradition; and
>
> (d) whether the petitioner is a fugitive.
>
> Michigan v. Doran (1978), 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521, 527; cited in Crabtree v. State (1980), 186 Mont. 340, 343, 607 P.2d 566, 567.

Petition of Blackburn (Mont. 1985), 701 P.2d 715, 717, 42 St.Rep. 525, 527.

From a review of the record, it is clear that the District Court took these standards into consideration. Coble admits the above-stated criteria are applicable in this case. He also admits that the extradition documents are in order and he is the person named in them. But Coble contends that the second requirement, that a crime be charged, is not met because, as a juvenile, he cannot be charged with the felonious offenses of grand theft and malicious injury to property. The offenses, he contends, can be charged only against an adult in both the asylum state (Montana) and the demanding state (Idaho). Therefore, Coble argues, the greatest offense he can be charged with is delinquency which is not an extraditable crime. We do not agree with these assertions.

Coble argues the case of People v. Smith (N.Y. 1981), 440 N.Y.S.2d 837, stands for the proposition that the offenses should be limited to delinquency and therefore non-extraditable. Smith, however, deals specifically with whether the juvenile can be considered a "fugitive" for extradition purposes. Further, the juveniles in Smith were

4

charged with a juvenile status offense, not a felony as in this case.

The District Court looked to the charging document, the warrant of arrest, and found that there was a charge of grand theft and malicious destruction of property under Idaho law. These charges are sufficient. The rule is clear:

> The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however [inartfully] charged with crime in the state from which he has fled. (Citations omitted.)

Blackburn, 701 P.2d at 718, 42 St.Rep. at 528.

Here, the District Court properly determined that a crime had been charged. The warrant is specific and in compliance with the requirements of § 46-30-211, MCA.

Coble cites case law which deals with the question of whether a juvenile can be extradited under the Uniform Criminal Extradition Act and further makes the statement that the majority does not favor juvenile extradition unless a "serious" crime has been committed. We find this to be inaccurate.

All the case law cited concludes that juveniles are not to be treated any differently than an adult by the asylum state:

> [J]urisdictions with extradition statutes comparable to those adopted in Utah and Wyoming have held that a juvenile fugitive may be extradited. In Ex Parte Jetter, Tex.Cr.App., 495 S.W.2d 925 (1973), the court remanded a juvenile fugitive charged with murder to custody of the demanding state explaining that the Uniform Criminal Extradition Act (which has been adopted by Utah [and Montana]) did not exclude minors from its

5

> operation. The court in Snyder v. State,
> 95 Idaho 643, 516 P.2d 700, 73 A.L.R.3d
> 695 (1973) held that a juvenile court
> hearing to determine whether to waive
> jurisdiction and allow the juvenile to be
> tried as an adult was unnecessary, being
> beyond extradition procedural
> requirements. Cf. People v. Pardo, 47
> Ill.2d 420, 265 N.E.2d 656 (1970).

Burnham v. Hayward (Utah 1983), 663 P.3d 65, 67.

Therefore, we find that for juveniles and adults alike, only the standards enunciated in Doran should be considered once the governor's warrant is issued.

> [O]nce the Governor of the State of
> Montana issued his warrant "all questions
> involving the prior arrest and detention
> are rendered immaterial." 39 C.J.S. §
> 115, Habeas Corpus, p. 889. Case law
> also holds that even if the previous
> detention was irregular, which is not the
> case here, then the governor's warrant
> renders all such claims moot. (Citations
> omitted.) Also, in Dilworth v. Leach
> (1973), 183 Colo. 206, 515 P.2d 1130, the
> Colorado Supreme Court agreed with the
> above cited principle and stated:
>
> "[N]either reason nor justice requires a
> change in the well-settled principle that
> the process involved in the initial
> arrest in the asylum state becomes moot
> upon the issuance of the governor's
> warrant." 515 P.2d at 1131.

Blackburn, 701 P.2d at 719, 42 St.Rep. at 529.

Here, once the governor's warrant was issued, the District Court had the ability to consider only the Doran standards. It did not, as Coble alleges, have the power to look to the charging state's law and determine Coble's status as a juvenile. As was said in Batton v. Griffin (Ga. 1978), 246 S.E.2d 667, 668, legal challenges "[s]hould be raised in the demanding state rather than in the sanctuary state." See

6

Snyder v. State (Idaho 1973), 516 P.2d 700. In this case, we feel that Coble should raise the issue of his juvenile standing in Idaho.

Coble argues that the Uniform Criminal Extradition Act contains no language that indicates it was intended to apply to juveniles. Citing § 1-2-101, MCA, Coble asserts that the court should not insert what has been omitted. A review of the Uniform Criminal Extradition Act shows that juveniles are not expressly included in the act, but it also shows that juveniles are not expressly excluded. The legislative history shows that juveniles were not intentionally omitted.

Other states have applied the Act to juveniles. Ex Parte Jetter (Tex. 1973), 495 S.W.2d 925; Burnham, supra. Respondent appropriately points out that Article IV, § 2 of the United States Constitution, on which the Uniform Criminal Extradition Act is based, provides that "[a] person charged" shall be subject to extradition. There is no limitation for juveniles. It is clear that there is to be no additional procedural protection for juveniles under the Act.

We hold that the failure of the Legislature to include, or specifically exclude, juveniles is of no aid to Coble in this case. The District Court was correct in limiting its consideration to the standards of Doran.

The Attorney General of the State of Montana has also recognized that juveniles are not to be exempted from application of the Uniform Criminal Extradition Act, 41 A.G.Op. 24 (1985). In evaluation of whether juveniles could be properly extradited, the Attorney General appropriately concluded that the majority of "[j]urisdictions allow extradition of juveniles if they are charged with a crime in the demanding state."

7

In conclusion, Blackburn expresses the standard of review required for reversal of the District Court's determination in this case.

> [T]he Governor's warrant is prima facie evidence of all the information recited in it including identity, fugivity and that the petitioner is properly charged with a crime. In re the Matter of Hart (1978), 176 Mont. 225, 583 P.2d 411. This Court recognized this general rule with respect to whether the accused was a fugitive in State ex rel. Hart v. District Court (1971), 157 Mont. 287, 293, 485 P.2d 698, 702, stating:
>
> "'The issuance of a warrant of rendition by the Governor of the asylum state raises a presumption that the accused is the fugitive wanted and it is sufficient to justify his arrest, detention and delivery to the demanding state. * * * In order to rebut the presumption the accused must prove beyond a reasonable doubt either that he was not present in the demanding state at the time of the alleged offense or that he was not the person named in the warrant . . . '"

Blackburn, 701 P.2d at 717, 42 St.Rep. at 527-528.

In this case, the Governor's warrant is "regular on its face and makes out a prima facie case authorizing extradition." Jetter, 495 S.W.2d at 925. Coble did not prove beyond a reasonable doubt that he was not present in Idaho at the time the alleged crimes were committed nor does he dispute that he is the party named in the warrant.

The District Court reached the proper conclusion and the petition for writ of certiorari is denied.

_____
Justice

8

We concur:

_J. A. Turnage_
Chief Justice

_[signature]_

_William E. Hunt_

_R. C. McDonough_
Justices